IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TED HAMILTON                                                                                    PLAINTIFF

v.                            Civil No. 4:13-cv-04038

JAMES SINGLETON; JOAN
MCCLEAN; JOHNNY GODBOLT;
and STEPHEN GLOVER                                                                    DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Ted Hamilton proceeds in this action *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983.  Plaintiff is currently incarcerated in the Arkansas Department of Corrections Wrightsville Unit in Wrightsville, Arkansas.  Currently before the Court are: (1) Plaintiff's Motion for Partial Summary Judgment (ECF No. 22); and (2) Defendants' Motion for Summary Judgment (ECF No. 38).  The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  ECF No. 36.  Pursuant to this authority, the Court finds these Motions ready for decision and issues this Memorandum Opinion.

I.      BACKGROUND

Plaintiff filed his Complaint on April 10, 2013.  ECF No. 1.  The events complained of in Plaintiff's Complaint occurred while he was incarcerated at the Hempstead County Detention Center ("HCDC").  Plaintiff named Joan McClean, Sheriff James Singleton, Steven Glover, and Johnny Godbolt as Defendants in this matter.

In his Complaint, Plaintiff alleges Defendants were deliberately indifferent to his medical needs by denying and delaying his access to medical treatment for a broken hand and "thumb

capsular ligament tear." ECF No. 1, p. 4.  Specifically, Plaintiff alleges he injured his hand and thumb on the evening of March 26, 2012 by falling off the top bunk.  ECF No. 1, p. 5.  Plaintiff was given an ice pack and pain pills and taken to the emergency room that same night.  ECF No. 1, p. 5.  Plaintiff's hand was x-rayed and splinted at the emergency room and he was sent back to the HCDC.  ECF No. 1, p. 5.

On March 28, 2012, Plaintiff filed an inmate medical request seeking an appointment with a "hand doctor" and explaining he was still in pain.  ECF No. 5, p. 6.  On April 5, 2012, Plaintiff filed another inmate medical request regarding the pain in his hand and thumb.  ECF No. 1, p. 6.  Plaintiff was seen by Defendant McClean[1] on April 7, 2012 and he was informed at this time that Defendant McClean would make him an appointment but needed to get Defendant Godbolt and Singleton's approval first.  ECF No. 1, p. 6.

On April 12, 2012, Plaintiff filed another inmate medical request regarding the pain in his hand and thumb.  ECF No. 1, p. 6.  On April 14, 2012, Plaintiff saw Defendant McClean again and she informed Plaintiff he had an appointment with an orthopedic surgeon on April 19, 2012.  ECF No. 1, p. 6.  On April 19, 2012, Plaintiff was transported to his appointment with the orthopedic surgeon.  ECF No. 1, p. 7.  Plaintiff claims the orthopedic surgeon attempted to put his thumb back "in position" but was unable to do so.  Further, Plaintiff claims that the orthopedic surgeon stated: because the HCDC waited so long to bring Plaintiff in, he would need surgery to repair his hand and thumb.  ECF No. 1, p. 7.

On April 26, 2012, Plaintiff filed an inmate medical request again complaining about the pain in his hand and thumb and requesting the surgery recommended by the orthopedic surgeon.  ECF No.

---

[1] Defendant McClean is either the resident nurse or nurse practitioner at the HCDC.

1, p. 7. On April 30, 2012, Plaintiff was released from the HCDC with a leg monitor. Plaintiff's hand surgery was scheduled for May 1, 2012. ECF No. 1, p. 8. When Plaintiff called the orthopedic surgeon's officer to get details on his surgery he was informed the HCDC was no longer paying for his surgery and the surgery center would require a payment of $2,000 from Plaintiff prior to the surgery the next morning. Plaintiff was unable to pay this amount so he did not have the surgery. Plaintiff has never had the surgery and claims he now has a permanent disability because he no longer has full range of movement in his "hand thumb joint." ECF No. 1, p. 9.

Plaintiff requests the Court grant him an injunction ordering Defendants to arrange for Plaintiff to have his hand surgery and physical therapy and also for compensatory damages against Defendants. ECF No. 1, p. 11.

## II.   LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v.*

*ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

### III.  DISCUSSION

As an initial matter, the Court must explain its approach to the peculiar docket in this matter. Plaintiff filed the instant Partial Motion for Summary Judgment along with a Declaration and Brief in Support on June 5, 2013 (hereinafter "Plaintiff's Motion"). ECF Nos. 22, 23, 24. On August 5, 2013, Defendants filed a Response to the Declaration Plaintiff filed in connection with his Partial Motion (herein after "Defendants' Response"). ECF No. 37.[2] Simultaneously with Defendants' Response Defendants filed their Motion for Summary Judgment, Statement of Facts, and Brief in Support (hereinafter collectively referred to as "Defendants' Motion"). ECF Nos. 38, 39, 40. On September 9, 2013, Plaintiff filed a "Declaration of Ted Hamilton in Reply to Defendants' Response to Plaintiff's Summary Judgment" (hereinafter "Plaintiff's Reply") ECF No. 44. Finally, on October 17, 2013, Plaintiff filed a Response to Defendants' Motion for Summary Judgment with the aide of the Court's Questionnaire (hereinafter "Plaintiff's Response"). ECF No. 46. Plaintiff noted in his Response that he intended to incorporate his Reply into the Response. As both Plaintiff's Partial Motion and Defendants' Motion present and argue the same legal issues and facts, the Court will analyze them together in this Opinion. Additionally, as Defendants's Response only included denial

---

[2]The Court notes that Defendants' Response to Plaintiff's Declaration does not present any arguments as to why Plaintiff should not be granted summary judgment but instead only disputes the facts asserted by Plaintiff in his Declaration in support of his Motion for Summary Judgment.

of facts, the Court will consider the arguments Defendants made in Defendants' Motion as arguments in response to Plaintiff's Partial Motion as well as arguments in favor of granting summary judgment in Defendants' favor.

    A.    <u>Applicable Law</u>

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendants acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976).

The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, "the prisoner must show more than negligence, more even than gross negligence, and mere disagreement with treatment decisions does not give rise to the level of a constitutional violation. Deliberate indifference is akin to criminal recklessness, which demands more than negligent misconduct." *Popoalii v. Correctional Med.*

5

*Servs,* 512 F.3d 488, 499 (8th Cir. 2008) (internal quotation marks and citations omitted).

Further, it is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976). However, the "Constitution does not require jailers to handle every medical complaint as quickly as each inmate might wish." *Jenkins v. County of Hennepin, Minn.,* 557 F.3d 628, 633 (8th Cir. 2009). The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005). Unless, however, the need for medical attention is obvious to a layperson in which case the plaintiff need not submit verifying medical evidence to show the detrimental effects of delay. *See Schaub v. VonWald,* 638 F.3d 905, 919 (8th Cir. 2011) (citing *Roberson v. Bradshaw*, 198 F.3d 645, 648 (8th Cir. 1999); *Aswegan v. Henry,* 49 F.3d 461, 464 (8th Cir. 1995); *see also Boyd v. Knox*, 47 F.3d 966, 969 (8th Cir. 1995) ("noting that a delay in treatment, coupled with knowledge that an inmate

is suffering, can support a finding of an Eighth Amendment violation").

  B. <u>The Record</u>

    1. <u>Undisputed Facts</u>

Plaintiff was a pretrial detainee at the HCDC on March 26, 2012. Plaintiff slipped and fell from the top rack of his bunk on March 26, 2012. During this fall, Plaintiff slammed his hand and thumb into a table in his cell. Plaintiff's hand swelled instantly. After this incident, Sgt. Brown brought Plaintiff an ice pack and pain pills. ECF No. 1. When this treatment did not ease Plaintiff's pain, Sgt. Brown transported Plaintiff to the Medical Park Hospital emergency room. Plaintiff was diagnosed with a sprain, given ibuprofen and a splint, and instructed to follow up with the HCDC doctor. Specifically, the radiologist reports read "negative ulnar variance with diastasis of the triquetral lunate joint. No fracture, subluxation or destructive lesion is identified. Hairline fracture may be occult." ECF No. 1-1. No one at Medical Park Hospital instructed Plaintiff of a specified time in which his hand needed repairing. ECF No. 46, p. 6.

On March 28, 2012, Plaintiff submitted an inmate medical request requesting to see a "hand doctor." In this request, he stated his hand gets cold and he had no feeling in his thumb. Additionally, he stated the pain pills he was receiving only worked for "a little while." ECF No. 1-2. Defendant McClean responded that an appointment would be made with Dr. Frazier, but Plaintiff was never taken to this appointment. ECF No. 46, p. 6.

On April 4, 2012, Plaintiff sent an inmate request form to Defendant Godbolt stating his hand was hurting and he needed to see a hand doctor. Defendant Godbolt responded that he sent Plaintiff a medical request the day before regarding his hand. ECF No. 46, p. 59.

On April 5, 2012, Plaintiff submitted another medical request indicating his hand and thumb

7

"hurt bad." ECF No. 1-3. Defendant McClean responded that an appointment with Dr. Frazier was cleared by Defendant Godbolt, but Plaintiff was never taken to any appointment with Dr. Frazier. ECF No. 46, p. 7.

On April 10, 2012, Plaintiff filed an inmate request to Defendant Glover inquiring as to why it was taking so long for Plaintiff to see a doctor about his hand. Defendant Glover responded that Defendant McClean was making Plaintiff a doctor's appointment. ECF No. 46, p. 52. On the same day, Plaintiff also sent an Inmate Complaint Sheet stating his hand hurt and asking when he would see the hand doctor. Defendant Godbolt responded stating Nurse McClean was making Plaintiff an appointment. ECF No. 46, p. 60.

On April 11, 2012, Plaintiff filed another inmate request to Defendant Glover inquiring into when he would be taken to see the hand doctor and stating that he was in pain. Defendant Glover responded stating Nurse McClean was making Plaintiff a doctor's appointment. ECF No. 46, p. 53. Plaintiff also filed a Complaint Form on April 11, 2012 with the same information. This complaint was investigated by Defendant Glover. ECF No. 46, p. 55.

On April 12, 2012, Plaintiff submitted another medical request stating the pain medication he was receiving was no longer working and inquired as to why it was taking so long for him to see a doctor. ECF No. 1-5. On April 14, 2012, Defendant McClean informed Plaintiff that an appointment was made with Dr. McLeod, an orthopedic surgeon, for April 19, 2012 and she also changed Plaintiff's pain medication prescription. ECF No. 46, p. 8; ECF No. 1-5.

Plaintiff was transported by the HCDC to his appointment with Dr. McLeod on April 19, 2012. ECF No. 46, p. 8. During Plaintiff's April 19, 2012 visit, Dr. McLeod performed another x-ray of Plaintiff's hand. ECF No. 46, p. 9. Dr. McLeod diagnosed Plaintiff with a "thumb capsular

and radial collateral ligament tear" and noted he needed surgery to repair it. ECF No. 1-6. Dr. McLeod also told Plaintiff he needed surgery to repair his hand but did not tell Plaintiff he needed to have surgery within a specified amount of time. ECF No. 46, pp. 9, 11. Plaintiff was scheduled for surgery on his hand at Baptist Health Clinic on May 1, 2012. ECF No. 46, pp. 12-13.

On April 20, 2012, Defendant McClean placed Plaintiff's thumb in a different splint. ECF No. 46, p. 12.

On April 22, 2012, Plaintiff filed an Inmate Complaint Sheet stating he needed his hand surgery scheduled. Defendant Glover responded that the surgery had been scheduled. ECF No. 46, p. 57.

On April 26, 2012, Plaintiff submitted another medical request stating he was still in pain and asking what was being done about the surgery recommended by Dr. McLeod. ECF No.1-8.

On April 30, 2012, Plaintiff was released from the HCDC with an ankle monitor. ECF No. 46, p. 12. After his release, Plaintiff contacted Baptist Health Clinic regarding his surgery and was informed the HCDC would no longer be paying for the surgery and Plaintiff must pay $2000 prior to his surgery on May 1, 2012. ECF No. 46, p. 13. Plaintiff did not have $2000 so he did not have the surgery on his hand. ECF No. 46, pp. 13-14.

On September 24, 2012, Plaintiff was sentenced and placed in the custody of the Arkansas Department of Corrections ("ADC"). Plaintiff remains in the custody of the ADC at this time.

Plaintiff has made several medical request regarding his hand while incarcerated in the ADC. ECF No. 46, p. 14. Plaintiff was seen by a healthcare provider at the ADC on October 16, 2012 and an X-ray was taken of his hand. ECF No. 40-2. On November 6, 2012, the healthcare provider at the ADC noted the X-ray of Plaintiff's hand was normal. ECF No. 40-4. On November 28, 2012,

9

a healthcare provider at the ADC noted Plaintiff had a weak grip in his hand and that there was "an obvious deformity of the 1st MCP Joint of the Left Hand." ECF No. 40-5. As of April 10, 2013, Plaintiff has not had any surgery on his hand. ECF No. 46, p. 17.

While at the ADC Plaintiff has been placed on one hand duty medical restriction from August 2013 through August 2014. ECF No. 46, p. 50.

      2.     <u>Disputed Facts</u>

Plaintiff asserts under penalty of perjury in his Response that Dr. McLeod told him he would need to "rebreak" Plaintiff's hand to repair it because the jail did not bring him to the doctor when he initially injured his hand. ECF No. 46, p. 10. Defendants dispute this statement arguing that Dr. McLeod's notes do not support this statement and that it is unclear why Dr. McLeod would make such a statement when Plaintiff's had was not broken by the initial injury. ECF No. 39, p. 3.

Plaintiff also asserts under penalty of perjury that he suffers from a permanent disability because he was unable to have surgery on his hand. Specifically, Plaintiff claims he does not have full range of motion in his hand and thumb and he suffers pain. ECF No. 46, p. 18. Plaintiff's only support for this contention is his medical restriction to one hand duty from the ADC.

    C.     <u>Plaintiff's Motion</u>

In Plaintiff's Motion he seeks summary judgment on his claims that Defendants denied and delayed his medical care by delaying his visit with Dr. McLeod for twenty-two (22) days. In his Motion, Plaintiff argues that the facts on the record show Defendants were deliberately indifferent to Plaintiff's medical needs. As the Court explains below in its analysis of Defendants' Motion, Plaintiff's claims regarding his care from March 26, 2012 to April 19, 2012 fail to state a

constitutional violation.[3]

Accordingly, the Court incorporates its below analysis of Defendants' Motion fully herein, and for the reasons stated below, finds Plaintiff's Motion for Partial Summary Judgment (ECF No. 22) should be **DENIED.**

    D.    Defendants' Motion

        1.    Official Capacity Claim

Plaintiff sued Defendants in their official and individual capacities. Defendants argue Plaintiff failed to state a policy or custom of Hempstead County violated his constitutional rights, and therefore, failed to state an official capacity claim.

Under Section 1983, a defendant may be sued in either his individual capacity, or in his official capacity, or in both. In *Gorman v. Bartch,* the Eighth Circuit Court of Appeals ("Eighth Circuit") discussed the distinction between individual and official capacity suits. As explained by the *Gorman* case:

> Claims against government actors in their individual capacities differ from those in their official capacities as to the type of conduct that is actionable and as to the type of defense that is available. *See Hafer v. Melo,* 502 U.S. 21, 112 S.Ct. 358, 116 L.Ed.2d 301 (1991). Claims against individuals in their official capacities are equivalent to claims against the entity for which they work; they require proof that a policy or custom of the entity violated the plaintiff's rights, and the only type of immunity available is one belonging to the entity itself. *Id.* 502 U.S. at 24–27, 112 S.Ct. at 361–62 (1991). Personal capacity claims, on the other hand, are those which allege personal liability for individual actions by officials in the course of their duties; these claims do not require proof of any policy and qualified immunity may be raised as a defense. *Id.* 502 U.S. at 25–27, 112 S.Ct. at 362.

*Gorman,* 152 F.3d 907, 914 (8th Cir.1998). Official capacity claims against Defendants are

---

[3] While the Court notes it is bound to consider the facts in the light most favorable to the non-moving party when analyzing motions for summary judgment, here there are no material facts in dispute. Therefore, the Court's analysis is the same for both the Plaintiff and Defendants' Motions.

essentially a claim against Hempstead County. "[R]igorous standards of culpability and causation must be applied to ensure that the [county] is not held liable solely for the actions of its employee" in cases where a plaintiff claims a county has caused an employee to violate the plaintiff's constitutional rights. *Board of County Commissioners, Oklahoma v. Brown,* 520 U.S. 397, 405 (1997).

Here, while Plaintiff does assert Sheriff Singleton released Plaintiff with a leg monitor on April 30, 2012—one day before Plaintiff's scheduled surgery—to limit Hempstead County's exposure to Plaintiff's medical bills, he makes no allegation that Sheriff Singleton's actions were the result of any custom or policy of Hempstead County. Further, in response to the Court's request to explain any custom, policy, or practice of Hempstead County that violated Plaintiff's constitutional rights, Plaintiff stated: "Defendant Sheriff James Singleton, is the keeper over the jail it was his government duty to provide necessary medical care to [Plaintiff]. For his hand." ECF No. 46, p. 57 (errors in original). Plaintiff did not present any facts showing a policy or custom of Hempstead County caused the alleged denial or delay of medical care.

Additionally, a claim of deprivation of a constitutional right cannot be based on a *respondeat superior* theory of liability. *See Monell v. Department of Social Services,* 436 U.S. 654, 694 (1978). In other words, Hempstead County cannot be held liable based merely on the fact it employs Sheriff Singleton or the other Defendants. Therefore, there are no genuine issues of material fact regarding Plaintiff's official capacity claims and these claims fail as a matter of law.

2. Individual Capacity Claim - Denial/Delay of Medical Care

Before beginning its analysis on Plaintiff's individual capacity claims the Court must address three initial matters. First, the Court must determine the claims asserted by Plaintiff.

Defendants interpret Plaintiff's Complaint to only include the claim that he was denied and delayed medical care for twenty-two (22) days from March 26, 2012 to April 19, 2012. The Court, however, finds Plaintiff also alleges a claim that Sheriff Singleton's release of Plaintiff on April 30, 2012 and his subsequent refusal to pay for Plaintiff's surgery on Mary 1, 2012 also constitutes deliberate indifference by denying Plaintiff medical care. Because Defendants only moved for summary judgment on Plaintiff's twenty-two (22) day delay claim, the Court can not address Plaintiff's release claim against Sheriff Singleton here. Defendants may, however, file a subsequent motion for summary judgment addressing this claim.

Second, the Court notes there is only one relevant factual dispute in this matter. Here, the majority of the facts in the record are undisputed. Defendants do, however, dispute Plaintiff's allegation that Dr. McLeod told him he would need to "rebreak" Plaintiff's hand to repair it because the HCDC did not bring Plaintiff to see Dr. McLeod when he initially injured his hand. ECF No. 39, p. 3.

The Court finds Plaintiff's allegation is blatantly contradicted by the record. The X-ray from Plaintiff's emergency room visit the night of his injury indicate no fractures in his hand. ECF No. 1-1. Further, Dr. McLeod did not find any fractures in his exam of Plaintiff's hand. Instead, Dr. McLeod noted Plaintiff suffered ligament damage. ECF No. 1-6. Accordingly, Plaintiff's contention that Dr. McLeod told him he would need to "rebreak" his hand is not credible and need not be considered as creating a genuine issue of material fact in this matter. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

With these initial matters dispensed with the Court can now begin its analysis of Plaintiff's individual capacity claims. Based on the undisputed facts on the record, it is clear Plaintiff was

not denied medical care from March 26, 2012 to April 19, 2012.  Plaintiff was taken to the hospital and an X-ray was taken of his hand the day of the injury—March 26, 2012.  The X-ray did not indicate a fracture, and Plaintiff was diagnosed with a sprain and prescribed Ibuprofen.  ECF No. 1-1.  Two days later on March 28, 2012, Plaintiff submitted a medical request stating he was still in pain and wanted to see a specialist.  Defendant McClean responded stating she would make Plaintiff an appointment.  ECF No. 1-2.  An appointment was made, and Plaintiff was seen by Dr. McLeod, an orthopedic specialist, on April 19, 2012.  ECF No. 1-6.  Additionally, Plaintiff was continually given pain medication and a splint for his hand/thumb during this time.  ECF Nos. 1-1, 1-3, 1-5, 1-7.  Therefore, there are no genuine issues of material fact regarding Plaintiff's denial of medical care claim for the time period of March 26, 2012 through April 19, 2012 and this claim fails as a matter of law.

     Plaintiff next claims Defendants were deliberately indifferent by delaying his medical care for the twenty-two (22) days that elapsed between his request to see a specialist and his appointment with Dr. McLeod.  The Court finds the delay of twenty-two (22) days to see a specialist for Plaintiff's injured hand does not amount to deliberate indifference.  *See e.g., Johnson v. Hamilton,* 452 F.3d 967, 973 (8th Cir. 2006) (the delay of a month from the time the plaintiff's finger was tentatively diagnosed as fractured and the x-ray of the finger was held to be merely negligent); *see also Bryan v. Endell,* 141 F.3d 1290 (8th Cir. 1998) (the delay in treating prisoner's broken hand rendering surgery impractical was merely negligent and did not rise to deliberate indifference as there was no evidence showing officials actually knew of the risk of harm but deliberately failed to act amounting to callousness); *see also Pietrafeso v. Lawrence County,* 452 F.3d 978, 983 (8th Cir. 2006) (showing of deliberate indifference is greater than gross negligence).

14

Further, the record indicates Plaintiff received pain medication and was treated with a splint on his hand during the twenty-two (22) days that elapsed between his request to see a specialist and his appointment with the specialist. This is the exact treatment prescribed to Plaintiff at the emergency room when Plaintiff was taken in the day of his injury.

Additionally, Plaintiff has failed to produce verifying medical documentation evidencing the twenty-two (22) day delay has harmed him. *Laughlin v. Schriro,* 430 F.3d 927, 929 (8th Cir. 2005) (The objective seriousness of delay in treatment must be measured by reference to the effect of delay, which must be shown by verifying medical evidence in the record). The record indicates Plaintiff's hand injury is a result of ligament damage that occurred at the time it was injured. ECF No. 1-6. As explained above, there is no documentation on the record to support Plaintiff's contention that Dr. McLeod will need to "rebreak" his hand in order to repair it and that this "rebreak" is a result of any delay in treatment. In fact, the medical documentation on the record clearly contradicts Plaintiff's contention. As also stated above, the Court need not take Plaintiff's contention as true when it is blatantly contradicted by the record. *Scott v. Harris*, 550 U.S. 372, 380 (2007).

Therefore, there are no genuine issues of material fact regarding Plaintiff's delay of medical care claim and this claim also fails as a matter of law.

Accordingly, Plaintiff has failed to state any constitutional violations relating to his medical care for the time period of March 26, 2012 through April 19, 2012 and these claims should be dismissed

## IV.  CONCLUSION

For the reasons stated above, Plaintiff's Motion for Partial Summary Judgment (ECF No.

22) is hereby **DENIED** and Defendants' Motion for Summary Judgment (ECF No. 38) is hereby **GRANTED** in part and **DENIED** in part.  Specifically, Plaintiff's denial and delay of medical care claims against all Defendants in their official and individual capacities relating to the time period March 26, 2012 through April 19, 2012 are dismissed and Defendants McClean, Godbolt, and Glover are dismissed from this case.  This leaves only Plaintiff's individual capacity claim against Sheriff Singleton related to his conduct in releasing Plaintiff on April 30, 2012 and subsequently refusing to pay for Plaintiff's surgery on May 1, 2012.

**DATED, this 28th day of March 2014.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE