IN THE UNITED STATES DISTRICT COURT
WESTERN DISTRICT OF ARKANSAS
TEXARKANA DIVISION

TED HAMILTON                                                                                            PLAINTIFF

v.                         Civil No. 4:13-cv-04038

JAMES SINGLETON                                                                                   DEFENDANTS

## MEMORANDUM OPINION

Plaintiff Ted Hamilton proceeds in this action *pro se* and *in forma pauperis* pursuant to 42 U.S.C. § 1983.  Plaintiff is currently incarcerated in the Arkansas Department of Corrections Wrightsville Unit in Wrightsville, Arkansas.  Currently before the Court are: (1) Defendant Singleton's Second Motion for Summary Judgment (ECF No. 54); (2) Plaintiff's Second Motion for Summary Judgment (ECF No. 58); (3) Plaintiff's Motion for a Hearing (ECF No. 78); (4) Plaintiff's Motion for a Hearing on Second Motion for Summary Judgment (ECF No. 79); and (5) Plaintiff's Second Motion for a Hearing on Second Motion for Summary Judgment (ECF No. 82).  The Parties have consented to the jurisdiction of a magistrate judge to conduct any and all proceedings in this case, including conducting the trial, ordering the entry of a final judgment, and conducting all post-judgment proceedings.  ECF No. 36.  Pursuant to this authority, the Court finds these Motions ready for decision and issues this Memorandum Opinion.

1.   **BACKGROUND**

Plaintiff filed his Complaint on April 10, 2013.  ECF No. 1.  The events complained of in Plaintiff's Complaint occurred while he was incarcerated at the Hempstead County Detention Center ("HCDC").  Plaintiff originally named Joan McClean, Sheriff James Singleton, Steven Glover, and Johnny Godbolt as Defendants in this matter.  Defendant Singleton is the only remaining defendant

1

following the Court's ruling on the first motion for summary judgment.[1]

In his Complaint, Plaintiff alleges Defendant Singleton was deliberately indifferent to his medical needs by releasing Plaintiff with a leg monitor after an orthopedic surgeon advised that Plaintiff needed hand surgery. Plaintiff was released with the leg monitor the day before he was scheduled for hand surgery. ECF No. 1, p. 8.

On March 26, 2012, while Plaintiff was housed in the HCDC, he injured his hand and thumb falling off the top bunk in his cell. ECF No. 1, p. 5. Plaintiff was given an ice pack and pain pills and taken to the emergency room that same night. ECF No. 1, p. 5. Plaintiff's hand was x-rayed and splinted at the emergency room and he was sent back to the HCDC. ECF No. 1, p. 5.

On April 19, 2012, Plaintiff was transported to his appointment with the orthopedic surgeon. ECF No. 1, p. 7. Plaintiff claims the orthopedic surgeon attempted to put his thumb back "in position" but was unable to do so. Further, Plaintiff claims that the orthopedic surgeon stated: because the HCDC waited so long to bring Plaintiff in, he would need surgery to repair his hand and thumb. ECF No. 1, p. 7. Plaintiff's hand surgery was scheduled for May 1, 2012. ECF No. 1, p. 8.

On April 30, 2012, Plaintiff was released from the HCDC with a leg monitor. Plaintiff's hand surgery was scheduled for May 1, 2012. ECF No. 1, p. 8. Upon release, Plaintiff called the orthopedic surgeon's office to get details on his surgery and he was informed the HCDC was no longer paying for his surgery. The surgery center required a payment of $2,000 from Plaintiff prior to the surgery the next morning, and Plaintiff was unable to pay this amount. Plaintiff did not have

---

[1] Defendants McClean, Godbolt, and Glover where all dismissed with Defendants' first Motion for Summary Judgment leaving only Plaintiff's individual capacity claim against Sheriff Singleton. ECF No. 53.

the hand surgery. Plaintiff has never had the surgery and claims he now has a permanent disability because he no longer has full range of movement in his "hand thumb joint." ECF No. 1, p. 9. Plaintiff is currently incarcerated in the Arkansas Department of Corrections ("ADC").

As relief, Plaintiff requests compensatory damages, actual damages, and injunctive relief in the form of an order directing Plaintiff receive surgery on his hand and any and all physical therapy and follow-up treatment. ECF No. 1, p. 11.

## 2. LEGAL STANDARD

The Court "shall grant summary judgment if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed. R. Civ. P. 56(a). "[A] genuine issue of material fact exists if: (1) there is a dispute of fact; (2) the disputed fact is material to the outcome of the case; and (3) the dispute is genuine, that is, a reasonable jury could return a verdict for either party." *RSBI Aerospace, Inc. v. Affiliated FM Ins. Co.,* 49 F.3d 399, 401 (8th Cir. 1995). The moving party has the burden of showing the absence of a genuine issue of material fact and that they are entitled to judgment as a matter of law, but the nonmoving party may not rest upon mere denials or allegations in the pleadings and must set forth specific facts to raise a genuine issue for trial. *See Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 256 (1986); *Celotex Corp. v. Catrett,* 477 U.S. 317, 324 (1986). The Court must view all evidence and inferences in a light most favorable to the nonmoving party. *See McCleary v. ReliaStar Life Ins. Co.,* 682 F.3d 1116, 1119 (8th Cir. 2012). However, "[w]hen opposing parties tell two different stories, one of which is blatantly contradicted by the record, so that no reasonable jury could believe it, a court should not adopt that version of the facts for purposes of ruling on a motion for summary judgment." *Scott v. Harris*, 550 U.S. 372, 380 (2007).

3. **DISCUSSION**

The majority of the relevant facts here are undisputed. The summary judgment record indicates Plaintiff injured his hand while incarcerated at the HCDC. Plaintiff received treatment for his hand while incarcerated at the HCDC including a visit with an orthopedic surgeon. This surgeon recommended surgery for Plaintiff's hand and scheduled the surgery for May 1, 2012. Defendant Singleton authorized Plaintiff's release from the HCDC, with a leg monitor, on April 30, 2012. Defendant Singleton subsequently refused to pay for Plaintiff's hand surgery scheduled for May 1, 2012. Defendant does not dispute Plaintiff's claim that he was released on April 30, 2012 in an attempt to limit Hempstead County exposure to Plaintiff's medical bills. ECF No. 60, p. 2.

The record is unclear, however, regarding the specifics of Plaintiff's injury and the type of surgery recommended and scheduled for May 1, 2012. Specifically, it is unclear as to whether the scheduled surgery qualifies as an objectively serious medical need or whether missing the surgery posed a substantial risk to Plaintiff's health. I must resolve any ambiguity of fact in favor of the Plaintiff at this stage of the proceeding. *See McCleary,* 682 F.3d at 1119.

Plaintiff has two distinct claims remaining against Defendant Singleton. First, Plaintiff claims Defendant Singleton violated Plaintiff's constitutional rights by releasing him in an effort to avoid paying for Plaintiff's hand surgery. Second, Plaintiff claims Defendant Singleton violated Plaintiff's constitutional rights by refusing to pay for Plaintiff's hand surgery once he was released. I will first address Defendant Singleton's duty to Plaintiff under the Eighth Amendment and then address whether Defendant Singleton violated Plaintiff's Eighth Amendment rights.

A. <u>Defendant Singleton's Eighth Amendment Duty</u>

I previously determined Plaintiff received medical care while incarcerated in the HCDC.

4

ECF No. 53.  The current issue is whether Defendant Singleton had a duty to provide any medical care to Plaintiff following his release from HCDC custody.  Further, if Defendant did have such a duty was he deliberately indifferent in refusing to pay for Plaintiff's surgery.   Plaintiff argues Defendant Singleton did have a duty to pay for Plaintiff's scheduled surgery and by refusing to do so he was deliberately indifferent to Plaintiff's medical needs.  Defendant Singleton argues he had no duty to provide Plaintiff with any medical care once Plaintiff was released and even if such a duty existed he had no obligation to pay for such medical care.

The Eighth Amendment does not proscribe affirmative duties on the state to provide citizens with medical care, however, an exception has been carved out for incarcerated persons.  *See Estelle v. Gamble,* 429 U.S. 97, 106 (1976).  In *Estelle v. Gamble,* 429 U.S. 97, 106 (1976), the Supreme Court explained "[i]t is but just that the public be required to care for the prisoner, who cannot by reason of the deprivation of his liberty, care for himself." *Id.* at 104.  This obligation to provide medical care to incarcerated persons is an exception to the general rule that the Due Process Clause does not place affirmative duties on the state.  *See DeShaney v. Winnebago Cty. Dep't of Soc. Srvs.,* 489 U.S. 189, 196 (1989).  In *DeShaney*, the Supreme Court explained the rationale for the constitutional requirement of providing medical care to inmates:

> when the State by the affirmative exercise of its power so restrains an individual's liberty that it renders him unable to care for himself, and at the same time fails to provide for his basic human needs . . . medical care . . . it transgresses the substantive limits on state action set by the Eighth Amendment and the Due Process Clause.  The affirmative duty to protect arises . . . from the limitation which it has imposed on his freedom to act on his own behalf.

*Deshaney,* 489 U.S. at 198-202.

There is no Eighth Circuit or Supreme Court precedent recognizing a constitutional duty

to provide medical care to an inmate after he is released.² In an analogous case from the Northern District of Georgia, plaintiff claimed defendants violated his Eighth Amendment rights by failing to provide a necessary surgery prior to his release from prison. *Couch v. Wexler,* Civil No. 1:06-CV-1998-RLV, 2007 WL 2728987 (N.D. Ga. Sept. 13, 2007). On July 9, 2004, while incarcerated, Couch was involved in a work accident at the warden's residence that severed his urethra necessitating reconstructive surgery to repair. The defendants provided Couch with medical care (including visits with a urologist that recommended surgical procedures) but did not provide him with the recommended surgery prior to his release on October 7, 2004. The defendants also refused to pay for the surgery after Plaintiff's release. Couch was housed in the prison infirmary from the time of his injury until his release. *Id.* at 1-2. The *Couch* court determined there to be no Eleventh Circuit or Supreme Court precedent establishing an Eighth Amendment duty to provide medical care to an inmate following his released. *Id.* at 7. The *Couch* court determined it would not *sua sponte* create such a duty.

   Accordingly, as in *Couch,* I will not create a duty, absent Eighth Circuit or Supreme Court

---

² Plaintiff cited to the only circuit that has recognized an Eighth Amendment duty to provide medical care post-release. *See Wakefield v. Thompson*, 177 F.3d 1160, 1164 (9th Cir. 199) (""[T]he state must provide an outgoing prisoner who is receiving and continues to require antipsychotic medication with a supply sufficient to ensure that he has that medication available during the period of time reasonably necessary to permit him to consult a doctor and obtain a new supply. A state's failure to provide medication sufficient to cover this transitional period amounts to an abdication of its responsibility to provide medical care to those, who by reason of incarceration, are unable to provide for their own medical needs."). Under Ninth Circuit's reasoning, the duty to provide care for a reasonable time after an inmate is released from custody arises from the state's restriction on the person's liberty to obtain care on his own behalf not from the fact the person was injured while incarcerated. *Couch*, 2007 WL 2728987, at *7 n. 4 (citing *Wakefield v. Thompson,* 177 F.3d 1160 (9th Cir. 1999)). "Accordingly, to the extent that incarceration (or the period following it) does not restrict a person's liberty, then the constitutional duty to provide care under the Eighth Amendment diminishes." *Id.* The Ninth Circuit's reasoning, however, is not binding on this Court.

precedent, requiring Defendant Singleton to pay for Plaintiff's surgery following his release. Plaintiff's claim that Defendant Singleton's refusal to pay for his post-release surgery violated his constitutional rights fails as a matter of law.

B.  Plaintiff's Release

Next, the I must determine whether Defendant Singleton's action in releasing Plaintiff the day before his scheduled surgery to avoid financial liability for the surgery violated Plaintiff's right to adequate medical care.

The Eighth Amendment prohibition of cruel and unusual punishment prohibits deliberate indifference to prisoners' serious medical needs. *Luckert v. Dodge County*, 684 F.3d 808, 817 (8th Cir. 2012). To prevail on his Eighth Amendment claim, Plaintiff must prove that Defendant acted with deliberate indifference to his serious medical needs. *Estelle v. Gamble,* 429 U.S. 97, 106 (1976). The deliberate indifference standard includes "both an objective and a subjective component: 'The [Plaintiff] must demonstrate (1) that [he] suffered [from] objectively serious medical needs and (2) that the prison officials actually knew of but deliberately disregarded those needs.'" *Jolly v. Knudsen,* 205 F.3d 1094, 1096 (8th Cir. 2000) (quoting *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997)).

To show that he suffered from an objectively serious medical need Plaintiff must show he "has been diagnosed by a physician as requiring treatment" or has an injury "that is so obvious that even a layperson would easily recognize the necessity for a doctor's attention." *Schaub v. VonWald*, 638 F.3d 905, 914 (8th Cir. 2011) (internal quotations and citations omitted).

For the subjective prong of deliberate indifference, the prisoner must show "more than negligence, more even than gross negligence, but less than purposefully causing or knowingly

7

bringing about a substantial risk of serious harm to the inmate." *Laganiere v. County of Olmsted,* 772 F.3d 1114, 1116-7 (8th Cir. 2014) (internal quotations ommitted). The official must "both be aware of facts from which the inference could be drawn that a substantial risk of serious harm exists, and he must also draw the inference." *Id.* (citing *Farmer v. Brennan,* 511 U.S. 825, 837 (1994). Deliberate indifference may also be manifested by "prison guards in intentionally denying or delaying access to medical care or intentionally interfering with the treatment once prescribed." *Estelle v. Gamble,* 429 U.S. 97, 104–05 (1976).

Further, it is well settled that a "prisoner's mere difference of opinion over matters of expert medical judgment or a course of medical treatment fail[s] to rise to the level of a constitutional violation." *Nelson v. Shuffman,* 603 F.3d 439, 449 (8th Cir. 2010) (internal quotation marks and citations omitted). An "inmate must clear a substantial evidentiary threshold to show the prison's medical staff deliberately disregarded the inmate's needs by administering inadequate treatment." *Id.* Despite this, issues of fact exist when there is a question of whether or not medical staff exercised independent medical judgment and whether the decisions made by medical staff fell so far below the reasonable standard of care as to constitute deliberate indifference. *See Smith v. Jenkins,* 919 F.2d 90, 93 (8th Cir. 1990).

Defendant Singleton does not dispute Plaintiff's claim that he released Plaintiff the day before the scheduled surgery to insulate Hempstead County from the surgery costs. Defendant Singleton may not deny Plaintiff necessary medical care based on Plaintiff's inability to pay for such medical care. *See Hartsfield v. Colburn*, 371 F.3d 454, 457-8 (8th Cir. 2004) (a jail doctor, who was aware of the inmate's tooth pain, that withheld dental care for approximately one and a half months for non-medical reasons was not entitled to summary judgment and evidence regarding

8

jail policy on the issue also implicated the sheriff of the county); *Monmouth County Corr. Inst. Inmates v. Lanzaro*, 834 F.2d 326, 347 (3rd Cir. 1987) (prison officials may not condition medical treatment on the inmate's ability or willingness to pay).  Moreover, an intentional refusal to provide medical care constitutes deliberate indifference.  *See Vaughan v. Lacey,* 49 F.3d 1344, 1345 (8th Cir. 1995)(deliberate indifference includes intentional denial of access to medical care).

However, the record is unclear as to whether Defendant Singleton deliberately disregarded Plaintiff's objectively serious medical need.  While the majority of the facts on the record are undisputed, there is simply not enough evidence on the summary judgment record for the Court to determine whether Plaintiff's hand surgery was of the type that would render Defendant's Singleton's refusal to pay for it a deliberately indifferent action.  *See Green v. Manning*, 692 F. Supp. 1283 (S.D. Ala. 1987) (no deprivation of constitutional rights where inmate's elective knee surgery was delayed).  Cf. *Jones v. Johnson*, 781 F.2d 769 (9th Cir. 1986) (classification of hernia as elective surgery did not insulate county from Eighth Amendment duty to provide proper medical care).  It has also been recognized that jail officials may properly consider the costs and benefits of treatments as well as the length of incarceration.  *See e.g., Delker v. Maass*, 843 F. Supp. 1390, 1399-1401 (D. Or. 1994).

The parties did not resubmit facts regarding Plaintiff's injury during this round of summary judgment, however, such facts are available from the parties first summary judgment motions.[3]  On March 26, 2012,  at the emergency room Plaintiff was diagnosed with a sprain, given ibuprofen and a splint, and instructed to follow up with the HCDC doctor.  Specifically, the radiologist reports

---

[3] I did not address whether Plaintiff's injury and surgery qualified as an objectively serious medical need during the first round of summary judgment because the parties did not argue it and the analysis did not require it at that time.  ECF No. 52.

read "negative ulnar variance with diastasis of the triquetral lunate joint. No fracture, subluxation or destructive lesion is identified. Hairline fracture may be occult." ECF No. 1-1. No one at Medical Park Hospital instructed Plaintiff of a specified time in which his hand needed repairing. ECF No. 46, p. 6.

Plaintiff was transported by the HCDC to an appointment with an orthopedic specialist, Dr. McLeod, on April 19, 2012. ECF No. 46, p. 8. During Plaintiff's April 19, 2012 visit, Dr. McLeod performed another x-ray of Plaintiff's hand. ECF No. 46, p. 9. Dr. McLeod diagnosed Plaintiff with a "thumb capsular and radial collateral ligament tear" and noted he needed surgery to repair it. ECF No. 1-6. Dr. McLeod did not tell Plaintiff he needed to have surgery within a specified amount of time. ECF No. 46, pp. 9, 11. Plaintiff was scheduled for surgery on his hand at Baptist Health Clinic on May 1, 2012. ECF No. 46, pp. 12-13.

Plaintiff made several medical request regarding his hand while incarcerated in the ADC. ECF No. 46, p. 14. Plaintiff was seen by a healthcare provider at the ADC on October 16, 2012 and an X-ray was taken of his hand. ECF No. 40-2. On November 6, 2012, the healthcare provider at the ADC noted the X-ray of Plaintiff's hand was normal. ECF No. 40-4. On November 28, 2012, a healthcare provider at the ADC noted Plaintiff had a weak grip in his hand and that there was "an obvious deformity of the 1st MCP Joint of the Left Hand." ECF No. 40-5. As of April 10, 2013, Plaintiff has not had any surgery on his hand. ECF No. 46, p. 17. While at the ADC Plaintiff has been placed on one hand duty medical restriction from August 2013 through August 2014. ECF No. 46, p. 50. Plaintiff claims he now has a permanent disability because he no longer has full range of movement in his "hand thumb joint." ECF No. 1, p. 9.

From these facts it is unclear whether the hand surgery was necessary or merely a

recommended or elective course of action as evidenced by the fact Plaintiff still has not received the hand surgery. Further, it is unclear whether Defendant Singleton denying the surgery ignored a substantial risk of harm towards Plaintiff. Therefore, based on the summary judgment record, I find issues of fact remain as to whether Defendant Singleton violated Plaintiff's rights by releasing him in an effort to avoid the costs of his hand surgery.

      C.      <u>Injunctive Relief</u>

Plaintiff also seeks an injunction in his Complaint. Specifically, Plaintiff requests the Court order he be able to undergo his hand surgery and Defendant Singleton pay for it. Plaintiff's release from the HCDC renders his request for injunctive relief moot. *Dulany v. Carnahan,* 132 F.3d 1234, 1239 (8th Cir. 1997) (release from the institution in which the injunctive relief is sought against moots the request for injunctive relief).

Furthermore, Plaintiff no longer has standing to seek injunctive relief against Defendant Singleton when Plaintiff is no longer incarcerated in the HCDC. "Standing to seek injunctive relief requires a plaintiff, inter alia, to show a likelihood of a future injury." *Meuir v. Green County Jail Employees*, 487 F.3d 115, 1119 (8th Cir. 2007) (holding a prisoner, that changed custodial placement from the county jail to the state penitentiary, lacks standing to seek injunctive relief against the county facilities dental treatment policies). Accordingly, Plaintiff's is not entitled to injunctive relief.

**4.      CONCLUSION**

Because the record in this matter is sufficient to allow disposition of the instant Motions for Summary Judgment without hearing oral arguments on the motions, Plaintiff's Motions for a Hearing (ECF Nos. 78, 79) are **DENIED**. Plaintiff's Second Motion for Summary Judgment (ECF

No. 58) is **DENIED.**  Defendant's Second Motion for Summary Judgment (ECF No. 54) is **GRANTED** in part and **DENIED** in part.  Specifically, Plaintiff's claims relating to Defendant Singleton's duty to pay for Plaintiff's surgery after Plaintiff was released and Plaintiff's claim for injunctive relief are dismissed with prejudice.  Plaintiff's claim that Defendant Singleton's action of releasing him rather than paying for his hand surgery was deliberately indifferent to Plaintiff and Plaintiff's claims for damages remain and will proceed to trial before a jury.

**DATED this 5th day of March 2015.**

/s/ Barry A. Bryant
HON. BARRY A. BRYANT
UNITED STATES MAGISTRATE JUDGE